**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1423
_____

ELLEN BETZ,
                              Appellant

v.

TEMPLE HEALTH SYSTEMS
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 15-cv-00727)
District Judge: Honorable Gerald J. Pappert
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 5, 2016

Before: FISHER, SHWARTZ and COWEN, <u>Circuit</u> <u>Judges</u>

(Opinion filed October 6, 2016)
_____

OPINION*
_____

PER CURIAM

     Appellant Ellen Betz appeals from an order of the District Court dismissing certain

Counts of her amended complaint prior to discovery and the Judgment entered upon the

jury's verdict on certain of her other Counts. For the reasons that follow, we will affirm.

Betz, a Registered Nurse, was hired by Temple University Health Systems in 2003 to work at Northeastern Hospital. She was transferred to Jeanes Hospital in June 2009 and assigned to Floor 4A, when Northeastern closed. In November 2012, Temple transferred Betz to a new floor at Jeanes, Floor 5A, where, she alleged, the work environment was sexually offensive. The nurses would regularly "joke" with each other by licking, groping, making lewd gestures, or pretending to grope each other's breasts and genitals, and they made sexually offensive comments. This occurred on a nearly daily basis. Betz found on Facebook a series of sexually offensive photographs portraying the nurses -- on the unit apparently and in uniform -- touching each other's breasts and genitals. Betz alleged that she repeatedly complained to her supervisors about the sexually offensive environment but they failed to take remedial action. Additionally, a supervisor threatened her with termination if she continued to complain. The nurses' sexually offensive conduct at work offended Betz and continued until the end of her employment with Temple. Betz was terminated for a medication error, which she allegedly tried to hide by altering patient records.

After exhausting her administrative remedies, Betz, through privately retained counsel, filed suit in the United States District Court for the Eastern District of Pennsylvania against Temple, asserting causes of action for a sexually hostile work environment under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, et seq., and the Philadelphia Human Relations Act ("PHRA"). In connection with her termination, she alleged that, as part of a campaign to retaliate against her for complaining about the sexually offensive conduct at work, she was falsely accused of

committing a medical error. Betz also asserted causes of action under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2615. Temple moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). In response, Betz amended her complaint as a matter of course. Fed. R. Civ. P. 15(a)(1)(A). Temple then renewed its motion to dismiss Betz's hostile work environment claims for failure to state a claim upon which relief can be granted.

In an order entered on August 7, 2015, the District Court granted Temple's motion and dismissed Betz's sexually hostile work environment claims -- Counts I and V of her amended complaint -- under Title VII and the PHRA. Applying the five-part test set forth in Andrews v. City of Philadelphia, 895 F.2d 1469, 1482 (3d Cir. 1990), for hostile work environment claims, the Court determined that Betz failed to allege facts sufficient to show that any discriminatory or harassing behavior was intentionally directed at her, and, even assuming that it was, she failed to allege facts sufficient to show that it was directed at her "because of" her gender, as required by Title VII. The Court applied our decision in Bibby v. Phila. Coca Cola Bottling Co., 260 F.3d 257, 262 (3d Cir. 2001), on same-sex sexual harassment, and determined that Betz had alleged nothing more than that her female coworkers had engaged in sexually explicit conduct, but not "because of" her gender.

Discovery ensued on Betz's remaining claims for retaliation under Title VII and the PHRA, a violation of her rights and retaliation under the FMLA, and defamation and interference with contractual relations under common law. After deposing Betz, Temple moved for summary judgment pursuant to Federal Rule of Civil Procedure 56(a).

3

Temple argued that Betz's termination was not in retaliation for her complaints, but rather the result of a serious medical error she committed, which she subsequently attempted to hide by altering patient records. Temple also argued that there was no credible evidence to sustain her common law claims of defamation and interference with contractual relations. Betz responded in opposition to Temple's summary judgment motion, submitting excerpts from the depositions of numerous witnesses, the Facebook photographs, and numerous other items, in support of her assertion that she was entitled to a trial on the remaining Counts of her amended complaint.

In an order entered on January 12, 2016, the District Court denied Temple's motion for summary judgment for the most part. The Court determined that, following its extensive review of the summary judgment record, genuine issues of material fact remained as to whether: (1) Temple retaliated against Betz in violation of Title VII and the PHRA; (2) Temple interfered with Betz's FMLA benefits; and (3) Temple was liable for defamation and interference with contractual relations. The Court granted summary judgment to Temple on Count IV of Betz's amended complaint, determining that no reasonable jury could conclude, see Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 252 (1986), that Temple had retaliated against Betz for using her FMLA leave.

Prior to trial, Betz, through her counsel, served and filed formal notice that she would voluntarily dismiss with prejudice, Fed. R. Civ. P. 41(a), her common law claims for defamation (Count VII) and tortious interference with contractual relations (Count VIII), and claims for post-termination retaliation pursuant to Title VII and the PHRA. See Docket Entry No. 61. Trial commenced on January 25, 2016 and the jury reached its

4

verdict three days later.  On the Verdict Form, the jury answered "No" to the questions whether (1) Betz had proven by a preponderance of the evidence that Temple retaliated against her in violation of Title VII and the PHRA by terminating her either for making complaints of sexual harassment to Temple or for filing a charge of sexual harassment with the EEOC or Philadelphia Human Relations Commission; and (2) Betz had proven by a preponderance of the evidence that Temple interfered with her right to take leave under the FMLA by requesting her to attend a meeting to discuss its investigation.  No post-trial motions were filed.  Judgment was entered by the District Court upon the jury's verdict in favor of Temple and against Betz on January 28, 2016.

Betz appeals pro se.  We have jurisdiction under 28 U.S.C. § 1291.  In her pro se brief, Betz seeks review of the "Order finding favor with [the] Jury Verdict;" the voluntary dismissal with prejudice of her claims for defamation and for post-termination retaliation pursuant to Title VII and the PHRA, and the order "removing two witnesses." Appellant's Informal Brief, at 1.

We reject as meritless Betz's contention concerning the Judgment entered upon the jury's verdict.  In accordance with the jury's verdict, the District Court properly ordered judgment in favor of Temple and against Betz on Counts II, III and VI.  The fact that Betz disagrees with the jury's evaluation of the evidence is not grounds for overturning the verdict on appeal.  "The jury has the exclusive function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in evidence, and reaching ultimate conclusions of fact." Garrison v. Baker Hughes Oilfield Operations, Inc., 287 F.3d 955, 959 (10th

Cir. 2002) (internal quotation marks omitted). Betz did not move for judgment as a matter of law, see Fed. R. Civ. P. 50. If a party fails to move for judgment as a matter of law at the close of all of the evidence, the party waives the right to mount any post-trial attack on the sufficiency of the evidence. See Yohannon v. Keene Corp., 924 F.2d 1255, 1262 (3d Cir. 1991). Betz also did not move for a new trial after the verdict was announced, see Fed. R. Civ. P. 59(a). Accordingly, the jury's verdict stands.

Next, we see no basis for restoring Betz's defamation Count and claims for post-termination retaliation pursuant to Title VII and the PHRA. On January 25, 2016, Betz's privately retained counsel filed a "Notice of Partial Voluntary Dismissal, With Prejudice, Pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i)," in which he voluntarily dismissed the claims for defamation (Count VII) and tortious interference with contractual relations (Count VIII), and claims for post-termination retaliation pursuant to Title VII and the PHRA. We lack authority to review private counsel's decision. Moreover, this action by her counsel to voluntarily dismiss certain of her claims is attributed to Betz. A plaintiff who voluntarily chooses her attorney "cannot … avoid the consequences of the acts or omissions of this freely selected agent." Link v. Wabash Railroad Co., 370 U.S. 626, 633-34 (1962). Each party in civil litigation is "deemed bound by the acts" of her lawyer. Id. Any dissatisfaction Betz may have with her privately retained counsel and his decisions in her litigation, and any remedy to which

she may be entitled, may be adjudicated in a professional malpractice action filed in state court, but it is not the proper subject of an appeal to this Court.[1]

Next, in challenging the District Court's order "removing two witnesses," Betz has referenced the Court's summary judgment Memorandum and Order. Appellant's Informal Brief, at 2.[2] Betz contends that the District Court, in its summary judgment decision, "removed" two of her witnesses who would have corroborated her claims for defamation and post-termination retaliation. The Court did no such thing. The Court determined in its summary judgment decision that genuine issues of material fact remained as to whether Temple was liable for defamation and interference with contractual relations. The Court specifically declined to judge the credibility of Betz's affiants (Susan Sommers and Bernadette Appiott) in denying summary judgment to Temple on these claims. In any event, Betz ultimately voluntarily dismissed her

---

[1] The civil docket does not show, nor do the parties disclose, whether Temple stipulated to the dismissal. Rule 41(a)(1)(A) allows a plaintiff to dismiss a civil action without a court order where the plaintiff files: "(i) a notice of dismissal *before* the opposing party serves either an answer or a motion for summary judgment; or (ii) a stipulation of dismissal signed by all parties who have appeared." Fed. R. Civ. P. 41(a)(1)(A) (emphasis added). In all other instances, the rule allows a plaintiff to voluntarily dismiss a civil action only through a court order, which in turn may contain terms that the court considers proper for granting the voluntary dismissal. Fed. R. Civ. P. 41(a)(2). "Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice." Id. Here, the issue of the prejudicial effect of Betz's voluntary dismissal of certain of her claims is not before us and we thus do not express a view on the matter.

[2] Although Betz states that she is appealing the District Court's January 13, 2016 Order, she does not raise any arguments in her brief regarding the dismissal of her FMLA retaliation claim, the only claim decided adversely to her on summary judgment. Accordingly, any challenge to the dismissal of her FMLA retaliation claim is waived. See Nagle v. Alspach, 8 F.3d 141, 143 (3d Cir. 1993).

7

defamation and tortious interference with contractual relations claims, and claims for post-termination retaliation pursuant to Title VII and the PHRA, and thus her argument that these two witnesses were improperly excluded from participating in the trial is moot.

Last, Betz seeks review of the District Court's order dismissing Counts I and V pursuant to Rule 12(b)(6). We review de novo a District Court's order granting a motion to dismiss pursuant to Rule 12(b)(6). See Wiest v. Lynch, 710 F.3d 121, 128 (3d Cir. 2013). The EEOC, who appears before us as amicus, Fed. R. App. P. 29(a), joins in Betz's argument that the District Court improperly dismissed Counts I and V prior to discovery. Betz and the EEOC argue that Betz stated a plausible Title VII sex discrimination hostile work environment claim and should have been given the opportunity for discovery.

A Rule 12(b)(6) motion tests the sufficiency of the factual allegations contained in the complaint. See Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). A motion to dismiss should be granted if the plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). We look for "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of" a claim for relief. Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556).

Title VII prohibits an employer from discriminating against an individual with respect to the "terms, conditions, or privileges of employment, *because of* such

8

individual's …sex …." 42 U.S.C. § 2000e-2(a)(1) (emphasis added). "When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." See Harris v. Forklift Systems, Inc. 510 U.S. 17, 21 (1993) (internal quotation marks removed). To survive a motion to dismiss a hostile work environment claim based on sex discrimination, Betz was required to establish that (1) she suffered intentional discrimination "because of" her gender; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) the discrimination would have detrimentally affected a reasonable person in the same position; and (5) the existence of *respondeat superior* liability. See Andrews, 895 F.2d at 1482; see also Konstantopoulus v. Westvaco Corp., 112 F.3d 710, 715(3d Cir. 1997)(describing an actionable hostile work environment claim as alleging "sufficient severe or pervasive" conditions).

The EEOC argues first that, although Betz did not allege that her coworkers targeted her for harassment, she may state a claim for sex discrimination through allegations that she endured a hostile work environment, even if she was not directly targeted for harassment, contrary to the District Court's understanding. See, e.g., Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 811 (11th Cir. 2010) (en banc) ("Evidence that co-workers aimed their insults at a protected group may give rise to the inference of an intent to discriminate on the basis of sex, even when those insults are not directed at the individual employee."). The EEOC contends that the District Court erred as a matter of law in dismissing Betz's claim on this ground. We disagree. The District

Court did not dismiss Betz's claim on the ground that she was not directly targeted for harassment. The District Court assumed, arguendo, that Betz pleaded facts sufficient to show that the discriminatory conduct was intentionally directed at her, and dismissed her claim because she failed to plead facts sufficient to show that it was directed at her "because of" her gender. We thus turn to the propriety of that determination.

Given that her coworkers also were women, the District Court looked to our decision in Bibby, 260 F.3d 257, for guidance on how a plaintiff alleging same-sex sexual harassment might demonstrate that the harassment amounted to discrimination "because of" her gender. In Bibby, the plaintiff, who was gay, contended that his (apparently) heterosexual coworkers harassed and tormented him because of his sexual orientation. The District Court granted summary judgment to the employer, determining that the evidence indicated that the plaintiff was harassed "because of" his sexual orientation, not "because of" his gender, and Title VII provides no protection from discrimination on the basis of sexual orientation. We agreed and affirmed on this basis, but also discussed the proof problems inherent in same-sex sexual harassment cases. Applying the Supreme Court's decision in Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75 (1998), which held that Title VII did not categorically bar a claim for same-sex sexual harassment, we acknowledged that proving such a claim was difficult because the usual inferences are not always so clear. For example, if a man is aggressively rude to a woman and sabotages her work, it is possible to infer that he is acting out of a general hostility to the presence of women in the workplace.

10

Accordingly, we explained that there were "at least three ways" by which a plaintiff alleging same-sex sexual harassment might demonstrate that the harassment amounted to discrimination "because of" his or her gender. Bibby, 260 F.3d at 264. Those situations in which the harassment could be seen as discrimination included (1) where there is evidence that the harasser sexually desires the victim, such as where a gay or lesbian supervisor treats a same-sex subordinate in a way that is sexually charged; (2) where there is no sexual attraction but where the harasser displays hostility to the presence of a particular sex in the workplace, such as where a male doctor believes that men should not be nurses and treats male nurses with hostility amounting to harassment; or (3) where the harasser's conduct is motivated by a belief that the victim does not conform to the stereotypes of his or her gender, such as where a woman is denied partnership by male partners who then advise her that she should walk, talk, and dress more femininely and wear make-up if she wished to improve her chances for partnership. Id. at 262-63. We emphasized, however, that whatever evidentiary route a plaintiff takes, he or she must "always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted" discrimination because of gender, id. at 264 (quoting Oncale, 523 U.S. at 81); Bibby had failed in that regard.

Since Betz's case does not involve sexual harassment by a gay or lesbian supervisor, or female supervisors who are hostile to the presence of women in the workplace, the first two avenues under Bibby for proving discrimination simply were unavailable to Betz. In opposing Temple's Rule 12(b)(6) motion to dismiss, she thus argued that she was forced to endure sexually offensive conduct on a daily basis because

11

of a belief by her harassers that she did not conform to their stereotype of how a woman should behave. Betz asked the District Court to infer that her coworkers and managers would not have subjected similarly situated male coworkers to the same sexually offensive conduct, and argued that Temple's motion should not be granted because only uncovering the facts through discovery would permit the Court to fully evaluate the claim.

The District Court was not persuaded, reasoning that Betz's suggested inferences were too attenuated. The Court explained that Betz failed to allege sufficient facts to show "that her coworkers made any statements or remarks to show that they believed [that she] was not living up to a stereotypical norm of female behavior" or "to show that her coworkers targeted other female workers who [like Betz] refused to join in their behavior." In the District Court's view, Betz's factual allegations painted a picture of an uncouth and unprofessional workplace, but, since her coworkers were equal opportunity offenders, "putting their lewd conduct on display for all to see, regardless of race, color, religion, sex, or national origin," there was no plausible claim for a hostile work environment.[3]

In its amicus brief, the EEOC argues that we must reverse this determination because the District Court limited Betz to the three routes articulated in Bibby for showing that the same-sex sexual harassment is "because of" gender. Those three paths,

---

[3] In its Memorandum, the District Court noted Betz's allegation in her amended complaint that two nurses, Helene and Anthony, contributed to the sexually charged environment by "passionately and openly … kiss[ing] each other and rub[bing] each other's genitals" in Betz's presence.

12

the EEOC argues, are expressly illustrative, not exclusive. The District Court set no such limitation on Betz. The only route that Betz argued in her written opposition to dismissal was that she suffered discrimination for refusing to conform to a gender stereotype. She voluntarily chose this <u>Bibby</u> route. If Betz had wanted to argue an evidentiary route other than those discussed in <u>Bibby</u>,[4] we are confident that the District Court would have considered the argument.

The EEOC further argues that <u>Bibby</u> contemplates a fully developed evidentiary record and that the issue is meant to be decided at summary judgment or trial, not on a motion to dismiss a complaint. The EEOC notes that the amended complaint referenced at least one male nurse (Anthony) in Betz's workplace, and argues that discovery may have revealed more about the gender composition of the workforce at Jeanes and the experience of Betz's male coworkers. Betz similarly argues that she should have been allowed to depose witnesses who would have corroborated her allegations of sexual harassment before the District Court dismissed her claims. Appellant's Informal Brief, at 1-2.

<u>Bibby</u> certainly does not preclude dismissal of a hostile work environment claim pursuant to Rule 12(b)(6). The standard for granting or denying a Rule 12(b)(6) motion is whether the allegations in the complaint state a plausible claim for relief, <u>Twombly</u>, 550 U.S. at 570; <u>Iqbal</u>, 556 U.S. at 678. But, even assuming that the plausibility issue

---

[4] The Supreme Court in <u>Oncale</u> offered three similar but not identical potential routes for proving that same-sex sexual harassment is "because of" gender. 523 U.S. at 80-81. First, the Court said, a plaintiff could show that the harasser is gay or lesbian. Second, a plaintiff could show that she had been "harassed in such sex-specific and derogatory terms by another woman as to make it clear that the harasser [was] motivated by general hostility to the presence of women in the workplace." <u>Id.</u> at 80. Or, third, she could "offer direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace." <u>Id.</u> at 80-81.

initially was a close one in Betz's case, the fact remains that extensive discovery took place on numerous claims, including her closely related Title VII and PHRA retaliation claims. Temple argues, persuasively, that, while Betz's hostile work environment claims were never submitted to the jury, her sexual harassment-based retaliation claims were. The parties engaged in broad discovery and the jury heard three days' worth of testimony regarding whether Temple retaliated against Betz because she complained about sexual harassment. After considering all of the evidence, the jury found that Temple did not retaliate against Betz because she complained about sexual harassment.

We conclude that, because there was extensive discovery in this case on closely related issues and an unfavorable jury verdict, reversing the District Court's Rule 12(b)(6) decision on Betz's hostile work environment claims would make no sense.[5] See Phillips, 515 F.3d at 234 (where there are not enough facts to raise reasonable expectation that discovery will reveal evidence of the necessary elements of claim for relief, complaint must be dismissed). Nothing in this record shows or even suggests that discovery was limited in any way, and Betz has not called our attention to any specific discovery that she was denied, including discovery of the experience of Betz's male coworkers at Jeanes, as a result of the District Court's dismissal of her hostile work environment claim. The evidence in support of her hostile work environment and retaliation claims overlapped to a great extent, and the jury found in favor of Temple after

_____

[5] We reached a similar conclusion under similar circumstances in Caver v. City of Trenton, 420 F.3d 243, 264 (3d Cir. 2005), where the plaintiff's race-based hostile work environment claim was not submitted to the jury, but his race-based claim of retaliation was.

hearing the evidence. We are not persuaded that additional discovery would have changed the outcome, and, accordingly, we will not reverse the District Court's Rule 12(b)(6) decision.

For the foregoing reasons, we will affirm the Judgment entered upon the jury's verdict in favor of Temple and against Betz, and the District Court's order dismissing Counts I and V of Betz's amended complaint pursuant to Rule 12(b)(6).